IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY, | } } } } | |
| Plaintiffs, | } } | |
| VS. | } } | CIVIL ACTION NO. H-07-4355 |
| 4-H VENTURES, INC., f/k/a B&D CONSTRUCTION COMPANY, INC., PETER FORREST REEVES, TRESCA MICHELE REEVES, W.D. HUBBERT, BARBARA JEAN HUBBERT, individually and as Trustee of the HUBBERT FAMILY TRUST, and HUBBERT FAMILY TRUST, | } } } } } } } } | |
| Defendants. | } | |

## OPINION & ORDER

This is a case involving several indemnity agreements made in conjunction with the issuance of surety bonds on certain construction projects. Plaintiff Hartford Fire Insurance Company ("Hartford") is the surety. Defendants 4-H Ventures, Inc., f/k/a B&D Construction Co., Inc. (hereafter, "B&D, Inc."), W.D. Hubbert, Barbara Jean Hubbert, individually and as the trustee for the Hubbert Family Trust, the Hubbert Family Trust, Peter Forrest Reeves, and Tresca Michele Reeves are the alleged indemnitors. Pending before the court is Hartford's motion to compel defendants W.D. Hubbert, Barbara Jean Hubbert, 4-H Ventures, Inc., and the Hubbert Family Trust (collectively, the "Hubbert Defendants") to immediately deposit collateral and/or for injunctive relief (Doc. 26). In compliance with this Court's Order of June 4, 2008, but subject to certain motions to dismiss for lack of subject matter jurisdiction,[1] the Hubbert Defendants have filed a response in opposition (Doc. 28). A hearing on this matter was held on

---

[1] The court denied these motions in its Opinion & Order, dated June 12, 2008 (Doc. 29).

1

June 13, 2008.  Subsequently, the Hubbert Defendants filed a supplemental response (Doc. 32), and Hartford filed a supplemental reply (Doc. 34).  For the reasons explained below, the court ORDERS that Plaintiff's motion (Doc. 26) is GRANTED.

## I. Background & Relevant Facts

Four General Indemnity Agreements (hereafter, the "GIAs") were signed by one or more of the Hubbert Defendants as indemnitors on August 31, 2004, July 5, 2005, February 28, 2006, and February 28, 2007.  (*See* Levesque Aff. Exs. B-1 through B-2, Doc. 26 Ex. 2).[2] The GIAs provided consideration for the issuance of approximately 45 surety bonds by Hartford, as surety, on construction contracts by B&D, Inc. and its successor in interest, Anchor Underground Construction, LLC, d/b/a B&D Construction Company, as principal (hereafter "B&D, Inc." and "Anchor Underground Construction, LLC" will be collectively referred to as "Anchor Underground" and the 45 surety bonds will be referred to as the "Anchor Underground Bonds").  (*See id.* at ¶¶ 4 and 6).[3]  Each of the GIAs provides, in relevant part, as follows:

> Collateral Security.  On Hartford's demand, the Indemnitors [including the Hubbert Defendants] shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not Hartford has made any payment or created any reserve . . . The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law.  Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

---

[2]   W.D. Hubbert and Barbara Jean Hubbert executed all four GIAs.  B&D, Inc. executed the 2004, 2005, and 2006 GIAs, and Hubbert Family Trust executed the 2004 GIA.

[3]   On December 24, 2007, Archer Underground Construction, LLC filed a Chapter 7 petition in bankruptcy under Case No. 07-38760 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, which remains pending at this time.

(*Id.* Exs. B-1 through B-2 at ¶ 6).

By October 2007, Hartford began receiving a high level of notices and claims on the Anchor Underground Bonds. (*Id.* at ¶ 8). As of October 12, 2007, Hartford expected losses on these bonds to exceed $2 million. (*See id.* at ¶ 9). After meeting with, *inter alia*, W.D. Hubbert and Barbara Jean Hubbert to discuss the claims, Hartford sent a letter to the indemnitors on October 12, 2007, which demanded that each of the indemnitors, jointly and severally, immediately deposit the amount of $2,275,257.10 as collateral pursuant to the collateral security provision of the GIAs. (*See id.* Ex. C).[4] Hartford also informed the indemnitors that "[g]iven the likelihood that the surety's exposure will increase, Hartford specifically reserves the right to make other and further demands for collateral as circumstances warrant." (*Id.*). As of April 4, 2008, Hartford had paid over $4 million in performance and payment bond claims on the Anchor Underground Bonds and further anticipated having total net losses and expenses in the amount of $6,056,962.00. (*Id.* at ¶ 11). Hartford sent a second written demand for collateral requesting that the indemnitors deposit collateral in the amount of $6,056,962.00. (*Id.* Ex. D). To date, none of the indemnitors, including the Hubbert Defendants, have deposited any collateral with Hartford. (*Id.* at ¶ 13).

Hartford filed the current motion to compel and/or for injunctive relief to enforce the collateral security provision of the GIAs as to the Hubbert Defendants. It requests that the court issue a restraining order and injunctive relief for specific performance of the obligation of the Hubbert Defendants to deposit collateral in the sum of $6,056,962.00 as demanded. Hartford claims that the following assets can satisfy the requested deposit: (1) several pieces of real property and improvements allegedly owned by the Hubbert Defendants (Doc. 26 Exs. 3 through

---

[4] In particular, Hartford sent its October 12 demand letter to W.D. Hubbert, Barbara Jean Hubbert, Peter Forrest Reeves, and Tresca Michele Reeves.

10); (2) property that W.D. Hubbert and Barbara Jean Hubbert transferred to the Hubbert 2006 Family Partnership, Ltd. in May 2006 (Doc. 26 Exs. 11 and 12); and (3) certain claims in the bankruptcy proceeding of Anchor Underground Construction, LLC allegedly owned by 4-H Ventures, Inc. (Doc. 26 Exs. 13 and 14). Alternatively and/or additionally, Hartford seeks a restraining order and injunctive relief restraining the Hubbert Defendants from disposing or impairing any property they own or have an interest in pending final judgment and satisfaction of said judgment.

## II.  Preliminary Injunction

In seeking a preliminary injunction, Hartford must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury or harm for which there is no adequate remedy at law; (3) threatened injury to the party seeking the injunction outweighs any harm that the injunction might cause to the party to be enjoined; (4) that the injunction will not disserve the public interest. *Lake Charles Diesel, Inc. v. GMC*, 328 F.3d 192, 195-96 (5th Cir. 1999). A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has "clearly carried the burden of persuasion" on all four requirements. *Id.* at 196 (quoting *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The court addresses each requirement in turn.

(1) <u>Success on the merits</u>

The parties do not dispute that Texas law applies in this diversity case. Under Texas law, an indemnity agreement, like the GIAs here, is an ordinary, valid, and enforceable contract, which "is read as any other contract." *Safeco Ins. Co. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied); *see also Associated Indem. Corp. v. CAT Contr.*, 964 S.W. 2d 276, 284 (Tex. 1998) ("We construe indemnity agreements under the normal rules of

contract construction."). In interpreting a contract, the court's primary concern "is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). To achieve this objective, the court considers the contract as a whole. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("This court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole . . . [and] each part of the contract should be given effect."). When considered as a whole, a contract is ambiguous only if "it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Here, the collateral security provision of the GIAs is unambiguous. It requires that the Hubbert Defendants deposit collateral security upon Hartford's demand. Moreover, the Hubbert Defendants agreed that Hartford would be entitled to injunctive relief for the specific performance of the obligation to provide the collateral security. Indeed, they agreed to waive any defenses to the contrary. Under the plain language of the indemnity contracts, Hartford is entitled to the relief it seeks.

The Hubbert Defendants do not dispute the plain language of the GIAs is unambiguous. They argue, however, that Hartford has failed to "connect the dots" between the GIAs and the Anchor Underground Bonds upon which certain claims have been made. This argument is unavailing. Hartford's Senior Bond Claim Manager, Rick Levesque, testified in his affidavit that Hartford issued the Anchor Underground Bonds in question pursuant to these GIAs. (*See* Levesque Aff. at ¶ 6, Doc. 26 Ex. 2). Nor is the court persuaded by Hubbert Defendants' contention that, of the Hubbert Defendants, only W.D. Hubbert and Barbara Jean Hubbert are subject to the injunctive relief provision. This argument is based on their conclusory

assertion that the only applicable indemnity agreement is the 2007 GIA, which is expressly contradicted by Hartford's evidence. There are four GIAs executed in this case. The 2004 GIA, executed by *all* of the Hubbert Defendants, provides in pertinent part, as follows:

> Application of Agreement. This Agreement applies to all Bonds executed by Hartford, whether prior to, simultaneous with, or subsequent to the date of execution of this Agreement (1) on behalf of any Indemnitor solely or as a member of a partnership, joint venture, or any other business entity or common enterprise . . .

(Levesque Aff. Exs. B-1, Doc. 26 Ex. 2). The 2004 GIA is, therefore, applicable and binds all of the Hubbert Defendants. Under the plain language of the indemnity agreements at issue, the court finds that Hartford has proved a substantial likelihood of success on the merits.

(2)     Substantial threat of irreparable injury or harm

Generally, contractual rights are not enforced by writs of injunction because irreparable harm is rarely shown when a suit for damages for breach of contract is available. *See Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.–Dallas 1989, no writ) (noting that irreparable harm is of such nature that the injured party cannot be adequately compensated in a form measured by any pecuniary standard). In this case, however, the Hubbert Defendants expressly agreed that the failure to provide the requested collateral constitutes irreparable harm. All of their arguments to the contrary must fall before the plain language of the indemnity agreements.[5]

(3)     Balancing of the harms

Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain. *United*

---

[5] This conclusion includes the Hubbert Defendants' argument that no imminent harm exists because some of the property identified by Hartford as potential collateral may consist of W.D. Hubbert and Barbara Jean Hubbert's rural homestead or may otherwise be exempt from judgment. The fact that some of the property may be exempt from seizure does not necessarily exempt it from the attachment of a perfected lien. *See, e.g., Exocet, Inc. v. Cordes*, 815 S.W.2d 350, 352 (Tex. App.—Austin 1991, no writ) ("The debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting to enforce the perfected lien.").

*States Fidelity & Guaranty Co. v. Feibus, et al.*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3rd Cir. 1999); *see also Safeco Ins. Co. of America v. Schwab, et al.*, 739 F.2d 431, 433 (9th Cir. 1984) (quoting *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939) ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.")).  By not enforcing the collateral security provision of the GIAs, Hartford losses the benefit for which it bargained in issuing the Anchor Underground Bonds from the outset.  This harm outweighs the harm to the Hubbert Defendants in having to deposit the collateral security, which they expressly agreed to do in the indemnity agreements.

        (4)    <u>The public interest</u>

        The court finds that enforcing the collateral security provision of the GIAs will not disserve the public interest.  For example, when a surety is granted the contractual right to settle a claim without a judicial determination of liability, the Supreme Court has stated:

> There is nothing wrong or unreasonable, or against public policy, in this stipulation [an indemnity agreement applying to settlement]. Parties sui generis may lawfully make such stipulations, and are bound by them. . . . The expense, delay, trouble, and risk of loss to the guarantee company is a sufficient safeguard against an unwarranted payment; and without such a stipulation as complained of here, guarantee companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.

*Associated Indem. Corp.*, 964 S.W.2d at 284 (quoting *Fidelity & Cas. Co. of New York v. Harrison*, 274 S.W. 1002, 1004-05 (Tex. Civ. App.—Fort Worth 1925, writ ref'd)).  These same principles apply, and serve the same public interest, in the context of indemnity agreements to post collateral security upon demand.

        Having satisfied all four prongs of the preliminary injunction inquiry, Hartford is entitled to a preliminary injunction enforcing the collateral security provision of the GIAs.

7

**III.    The Issue of Collateral**

W.D. Hubbert and Barbara Jean Hubbert contend that they do not have the assets necessary to satisfy Hartford's collateral demand.  At the hearing on this matter, the court ordered the Hubbert Defendants to provide a sworn statement of assets and a proposed budget.  Attached to the Hubbert Defendants' response are unsworn schedules identifying real, personal, and allegedly exempt property and an unsworn schedule identifying creditors holding secured claims.  Also attached is a sworn identification of sources of income and estimated average monthly expenses of W.D. Hubbert and Barbara Jean Hubbert (the "Budget").

The Hubbert Defendants argue that any injunction should not impair W.D. Hubbert and Barbara Jean Hubbert's ability to (1) make expenditures and incur indebtedness for reasonable and necessary living expenses such as food, clothing, shelter, transportation, medical care and/or other expenses identified in the Budget, (2) make expenditures and incur indebtedness for reasonable attorney's fees in conjunction with several pending lawsuits (including the present one), and (3) engage in reasonable and necessary acts to conduct their usual business, occupation and/or day-to-day lifestyle, including, without limitation, maintenance, upkeep, repair and/or operation of their property.  To accomplish these objectives, the Hubbert Defendants argue that any injunctive relief should exclude any exempt property identified on Schedule C (Doc. 32 Ex. 3) and/or certain non-exempt property identified on Schedule B (Doc. 32 Ex. 2) as follows:

(1)   Item 1      Cash on hand

(2)   Item 2      Current Checking Account Balances

(3)   Item 7      Wedding Set

(4)   Item 13     Checking Account; Anchor Underground Claims; Waukasha Pearce Claims

8

      (5)      Item 14      Checking Account Balance

      (7)      Item 31      Animals (Horses and dogs)

It is unclear at this time what, if any, of the identified property properly qualifies for the alleged exemptions. Until Hartford has the opportunity to conduct discovery into such claims, the court shall enjoin the Hubbert Defendants from selling, transferring, further encumbering, disposing of, or otherwise destroying or taking any action regarding all of the property identified on the attached schedules.

As to the allegedly non-exempt property, the Hubbert Defendants have not explained or supported their conclusion that Items 1, 2, 7, 13, 14, or 31 would not be subject to the injunctive relief requested. Nor are the assets of 4-H Ventures, Inc. and the Hubbert Family Trust immune because the preliminary injunction expressly encompasses 4-H Ventures, Inc. and the Hubbert Family Trust. The court finds that all of the allegedly non-exempt property is subject to being deposited as collateral.

Finally, Hartford has objected to the Hubberts' failure to disclose their interest in the following items:

      (1)      Real property located at 914 River Cliff Drive, Canyon Lake, Comal County, Texas 78133 (the "Canyon Lake Property");

      (2)      Specific Interest in the Hubbert 2006 Family Partnership, Ltd.;

      (3)      Specific Interest in the Darrin Noel Hubbert 2006 Investment Trust; and

      (4)      Specific Interest in the David Blake Hubbert 2006 Investment Trust.

Hartford further objects to the proposed Budget submitted by W.D. Hubbert and Barbara Jean Hubbert on the grounds that the Budget is excessive and unsupported. The court agrees that the

schedules of assets are incomplete and that the list of expenses do not allow for a meaningful analysis. Hartford is entitled to a full discovery of the Hubbert Defendants' assets and their claimed expenditures. The preliminary injunction order shall reflect the same.

## IV.     Conclusion

Accordingly, and for all of the reasons explained above, it is hereby

ORDERED that Plaintiff's Opposed Motion to Compel Defendants W.D. Hubbert, Barbara Jean Hubbert, 4-H Ventures, Inc., and the Hubbert Family Trust to Immediately Deposit Collateral and/or for Injunctive Relief (Doc. 26) is GRANTED.

A separate order of preliminary injunction shall follow.

SIGNED at Houston, Texas, this 25th day of June, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE